BOUTALL, Judge.
This is a suit for workmen’s compensation benefits. The trial court awarded total disability benefits from the date of injury to the date of trial, a period of slightly more than one year. The plaintiff-employee has appealed, and the defendant-employer has answered the appeal asking decrease in benefits.
The record discloses that Julius Payton, Jr. was employed by Wells Fargo Armored Service Corporation as a custodian, whose duties were pick-up and delivery of money and other valuables for customers of Wells Fargo. At the time in question he was working on a particular route which consisted in part of pick-up and delivery of coins collected from pay telephones. These coins were held in the telephone containers which were in turn placed in a special type of case resembling a suitcase each of which weighed from 36 to 50 pounds. These suitcases were designed to fit within a larger container or bin on wheels for easier transportation. In the course of lifting one of these suitcases on March 17, 1972, Payton felt something snap in his back and began to suffer a burning sensation. It is this event which he contends forms the basis of his disability. The issues before us are essentially factual.
It was defendant’s initial contention that Payton was not injured at work at all, and to support this or at least to show only a slight degree of injury, the testimony of Payton’s co-worker was offered to show that Payton mentioned nothing of this event to him, nor was he aware of anything out of the ordinary happening, and that Payton finished the day without any complaint, and indeed worked for several weeks thereafter without pain. As opposed to this, Payton testified that he did mention the fact to his co-worker, and also reported the event to the dispatcher at the end of the day. He informed the dispatcher that he had hurt his back and that unless it cleared up he would have to seek medical relief. This event took place on a Friday and by Monday Payton sought medical help and was sent to the company doctors for examination and treatment. Under these circumstances we can perceive no merit in defendant’s contention.
The employee in this case alleges that he has injured his back, and although initially there was only a burning sensation, his back began to pain him more and more until it was so severe that he sought medical attention. He testified that it has continued to hurt him severely up to the time of trial, so much so that not only is he disabled from doing the type of work he was then engaged in, but he is unable to do any sort of work whether or not it includes lifting, bending, etc. He testified that the pain is no longer constant, but that it is intermittent, and whenever he sits in a particular position for a long time or whenever he walks too much, he suffers pain. Additionally certain movements of his body and the state of the weather also cause him pain. The trial judge granted him total disability up to the date of trial, April 3, 1973, and awarded no future disability.
The medical evidence in this case shows that several days after the injury, Payton was examined by Dr. William Roy, who, although he found no objective signs of injury, thought that Payton probably suffered some muscle strain in his back and placed him on a regime of conservative treatment and physical therapy. During this time he was also seen by Dr. Faust, an associate of Dr. Roy, who corroborates Dr. Roy’s findings. Payton was discharged on March 29th by Dr. Roy and told to return to work. However on the 30th he returned to the doctor’s office complaining of very severe pain down his back bilaterally through his buttocks and Dr. Faust reexamined him. It is the conclusion of these doctors that perhaps Payton suffered a myofascitis, which they liken to a low back muscle which becomes sore the next day after excessive use without specific injury. The conclusion reached by these doctors was that Payton could not have suffered the severe pain of which he complained *431 without also exhibiting some positive evidence. It should be also noted that during this period of treatment, Payton continued to work.
Payton testifies that his pain worsened and he could no longer stay at work, so he sought the medical advice of Dr. Kenneth Vogel on April 18, 1972. Although on his examination at that time, Dr. Vogel could find no objective signs of injury, he concluded that from the history given him, Payton had suffered some sort of low back strain and placed him on a regime of conservative treatment with extensive physical therapy. By July 13, 1972 he reported that Payton had improved and no longer complained of continuous pain but only intermittent paiñ and a milder degree of pain. Nevertheless on September 5, 1972, on a reexamination, he discovered a mild degree of paraspinous muscle spasm on the left side with a mild degree of scoliosis. Because of this he had Payton hospitalized on September 17th for four days for a complete examination during which a myelo-gram and discogram were done. All of the tests, including x-ray examination, showed results within normal limits and nothing unusual about Payton’s condition. He then adjusted the corset that Payton was wearing and made some changes in the physical therapy treatment. On October 5, he concluded that Payton should be asymptomatic within a month or so, and physical therapy was reduced to three times a week. During the course of this treatment, Payton was treated some 98 times with physical therapy ending on October 26, 1972.
Payton was last seen by Dr. Vogel on February 8, 1973 at which time Dr. Vogel noted that he was no longer taking physical therapy and that he still exhibited no positive findings of injury. He concluded that Payton had suffered an injury to the vastus or to the joints of the back, and that he had a non-specific chronic lumbo-sacral sprain. He felt that he could do nothing more for Payton and that in general he was suffering from no great disability, recommending that Payton return to work but avoid heavy pulling or lifting. He suggested that Payton could lift amounts up to possibly 50 pounds if he were careful and used the proper muscles in such lifting.
The only other doctor who testified was Dr. Ray Haddad, who examined Payton on December 20, 1972. He could find no significant facts in his examination which would indicate that Payton was injured, and he concluded from Payton’s history that while he may have had a probable lumbosacral sprain, that he had recovered in due course.
Considering all of the medical testimony, the trial judge concluded that Pay-ton did suffer an injury on March 17, 1972, and that he was disabled until April 3, 1973. We find no error in his conclusion. The course of treatment undergone by this man, and the findings of the doctors are such that we also conclude there was some injury to his back which could not be particularized, but which did cause him pain. We believe his complaints of pain to be greatly exaggerated, and these exaggerated complaints have apparently led to the conclusion of some of the doctors that this man was not injured and should return to work. Nevertheless we are confronted with the finding of muscle spasm on September 5, 1972, which would indicate that at that time there was some disintegration of his physical condition and objective symptomology began to appear. However prompt and determined treatment by Dr. Vogel managed to hold this condition in check, and in fact it improved to the extent where we conclude Payton was no longer disabled within the purview of the act. While we may quarrel to some extent with the termination of disability in April rather than some earlier date, we conclude that such termination under these circumstances is fully within the trial judge’s discretion, and we affirm his judgment.
The trial judge also awarded medical expenses during the period of treat *432 ment, and since we find disability, we also approve the award of the medical expenses. However, plaintiff asks for penalties and attorney’s fees for nonpayment of compensation. Considering the testimony of Doctors Roy and Faust, and the lack of objective findings by Dr. Vogel, we believe the employer was justified in not making compensation payments and did not withhold such payments in bad faith.
Accordingly, for the reasons above expressed, we are of the opinion that the judgment appealed from is correct and it is affirmed.
Affirmed.